*Electronically Filed*

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CASE NO. 3:25-CR-132-RGJ**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| v.  **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS INDICTMENT** | |
| **LARYEN TORRES-CARMONA** | **DEFENDANT** |

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Comes the Defendant, by and through his counsel, Attorney Ashlea N. Hellmann and hereby files with this Honorable Court, the following *Memorandum of Law in Support of Motion to Dismiss Indictment*.

### FACTUAL BACKGROUND

Defendant Laryen Torres-Carmona (hereinafter "Mr. Torres") is a native and citizen of Cuba. On July 25, 2023, he appeared at an official point of entry (Nogales, Arizona) to apply for admission into the United States through an appointment. **See Exhibit A**. He was then paroled into the United States for a period of two years. Id. At the same time, he was placed in removal proceedings[1]. **See Exhibit B**. In these proceedings, Mr. Torres was designated as an "arriving alien." Id. Mr. Torres's first Notice to Appear for a hearing was set for January 22, 2024, but was later changed to October 16, 2025, and then changed again to June 3, 2027. Id. He has not appeared before that Court yet for any substantial ruling to be made.

---

[1] The basis for the removal proceedings was because Mr. Torres did not have a visa or other entry document at the time he applied for entry.

1

Due to his Cuban nationality though, and pursuant to the 1966 Cuban Adjustment Act (Public Law 89-732), Mr. Torres became eligible to file to adjust his parole status after being physically present in the United States for one year. Mr. Torres retained counsel, who filed this application (Form I-485) with U.S. Citizenship and Immigration Services ("USCIS") on January 17, 2025.[2] **See Exhibit C**. As such, though Mr. Torres's parole status ended on July 27, 2025, he was not eligible to be removed from the United States as his adjustment of status application was pending with USCIS at the time his parole ended.[3]

On July 30, 2025, USCIS Louisville emailed Enforcement and Removal Operations ("ERO") Louisville regarding "several subjects reporting to their office with either final orders of removal or criminal history." **See Exhibit D**. ERO claimed to have "vetted" that list and planned to take Mr. Torres into custody due to "recent criminal arrests".[4] The same day, USCIS sent a "Request for Applicant to Appear for Initial Interview", asking Mr. Torres report on August 26 "for the completion of [his] Application to Register Permanent Residence or Adjust Status Form I-485 and any supporting applications or petitions."[5] **See Exhibit E**. In reality, this was a ruse intended to obtain Mr. Torres's physical presence and to formally deny his I-485 application for permanent residence. This administrative closure effectively eliminated any protection against Mr. Torres's planned removal. In support of this plot, USCIS waited until the day of Mr. Torres's arrest to mail his "Notice of Administrative Closure". **See Exhibit F**. Within the Notice letter, USCIS Director, Michael L Zervas II, claimed that (1) Mr. Torres was currently in removal proceedings, (2) that Mr. Torres-Carmona was "not an 'arriving alien'"[6], (3) that only the Executive Office for

---

[2] During the time Mr. Torres Carmona was still lawfully present on parole.
[3] Mr. Torres's status up until the day of his arrest was "Pending Adjustment Application."
[4] These were criminal arrests, not adjudications of guilt.
[5] The Complaint (¶9) in this case states that on January 17, 2025, he received a "Notice of Action" to appear on August 26, 2025; this is incorrect.
[6] Mr. Torres was identified as an arriving alien multiple times by DHS and USCIS. See collective **Exhibit B.**

2

Immigration Review ("EOIR") had jurisdiction to grant or deny his Form I-485, and (4) that, as a result, USCIS would administratively close his request to adjust his status.

The U.S. Department of Homeland Security ("DHS"), through Supervisory Detention and Deportation Officer ("SDDO") R. Duckworth, then used this as an opportunity to arrest Mr. Torres. The Form I-200 "Warrant for Arrest of Alien" **(See Exhibit G)** claims that Mr. Torres "lacks immigration status or notwithstanding such status is removable under US immigration law." This warrant was also created on August 26, the same day as Mr. Torres's arrest. In the course of this arrest, Mr. Torres is alleged to have pushed an Immigration and Customs Enforcement ("ICE") officer and was subsequently charged with assault of said officer, which resulted in the above-styled indictment. Mr. Torres now files his motion to challenge the constitutionality of this arrest.

## APPLICABLE LAW

### *The law as to Defendant's Immigration Status*

The Attorney General is granted broad powers over immigration matters. See 8 U.S.C. § 1103(a). Excluded aliens normally are immediately deported, "unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper." 8 U.S.C. § 1227(a). Pending deportation, the Attorney General may,

> in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States ... and, when the purposes of such parole shall, in the opinion of the Attorney General have been served, the alien shall forthwith return or be returned to the custody from which he was paroled ....

Parole is a form of immigration status for an ongoing applicant for admission. *See* Duarte v. Mayorkas, 27 F.4th 1044, 1060 (5th Cir. 2022). Under 8 U.S.C. 1255(a). Parolees are considered to have entered lawfully for adjustment of status purposes. *See* Succar v. Ashcroft, 394 F.3d 8, 26

(9th Cir. 2005). The "status"[7] of an alien who was paroled into the United States may be adjusted by filing a Form I-485 with USCIS. *See* 8 C.F.R. §245.2(a)(2)(ii). Under 8 C.F.R. §1245.2(a)(1), the Immigration Court ("EOIR") has exclusive jurisdiction over any applications for adjustment of status filed by an alien who had previously been placed in deportation proceedings ***unless*** the applicant is an "arriving alien," in which case exclusive jurisdiction lies with USCIS[8]. Duarte v. Mayorkas, 27 F.4th 1044, 1050 (5th Cir. 2022); *see also* Matter of Yauri, 25 I. & N. Dec. 103 (BIA 2009) (USCIS has exclusive jurisdiction over the adjustment applications of "arriving aliens" who have been placed in removal or deportation proceedings.). Under 8 Code of Federal Regulations (C.F.R) § 1.2, an "arriving alien" includes an applicant for admission coming or attempting to come into the United States at a port-of-entry. Importantly, an" arriving alien" remains classified as such, even if paroled pursuant to section 212(d)(5) of the Immigration and Nationality Act (INA), and even after such parole is terminated or revoked. *See* Del Carmen Duron v. Nielsen, 491 F.Supp.3d 256 (2020).

### *The law as to Violations of Constitutional Protections*

The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Entrapment is a difficult, conceptually slippery, and philosophically controversial concept, normally reserved for a jury to determine, but can be established as a matter of law under specific circumstances. This is known as "objective entrapment". *See* United States v. Myers, 527 F. Supp. 1206, 1220 (E.D.N.Y. 1981), aff'd, 692 F.2d 823 (2d Cir. 1982) (…"objective" entrapment, the view that over-involvement of the government in the commission of a crime requires dismissal of an indictment,

---

[7] "Status" describes the type of permission to be present in the United States that an individual has. See Steel on Immigration Law §§ 2:23, 3:1 (2015 ed.).
[8] Unlike Immigration Courts, USCIS is part of the Department of Homeland Security ("DHS"), the same agency that makes initial determinations as to whether an individual is an "arriving alien".

4

has also been called "entrapment as a matter of law".). The Supreme Court has observed that, though entrapment itself does not carry constitutional protections, that Due Process Clause protections may still bar a conviction where the government's involvement in a criminal enterprise has become sufficiently outrageous and shocking to the universal sense of justice. United States v. Marcello, 731 F.2d 1354, 1357 (9th Cir. 1984) *quoting* Hampton, 425 U.S. at 488–91, 96 S.Ct. at 1649–50; Russell, 411 U.S. 431–32, 93 S.Ct. 1642–43; *see also* U.S. v. Johnson, 565 F.2d 179, 181 (CA 1 1977) (…it is nevertheless subject to an overriding exception that under either the court's supervisory power or the due process clause, a predisposed defendant cannot be convicted if police over-involvement in his crime reaches "a demonstrable level of outrageousness".).

Further, "[a]n otherwise lawful seizure can violate the Fourth Amendment if it is executed in an unreasonable manner," United States v. Alverez-Tejeda, 491 F.3d 1013, 1016 (9th Cir. 2007) (citing United States v. Jacobsen, 466 U.S. 109, 124, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)), including ***if it is executed by means of an unreasonable ruse***, Id. at 1016–17 (emphasis added). It has long been recognized that law enforcement may use deceit in certain circumstances. Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 77 L.Ed. 413 (1932). However, not every ruse is reasonable under the Fourth Amendment. *See* Lewis v. United States, 385 U.S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) ("[T]he particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception."). Law enforcement does not have carte blanche to use deception to effect a search and seizure. The court must assess the reasonableness of law enforcement's use of deception by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Jacobsen, 466 U.S. at 125, 104 S.Ct. 1652 (quoting United States v. Place, 462 U.S. 696, 703 (1983)); Alverez-Tejeda, 491 F.3d at 1016

("The benchmark for the Fourth Amendment is reasonableness, which requires us to weigh the government's justification for its actions against the intrusion into the defendant's interests.").

## ARGUMENT

For years, both the DHS and the Department of Justice (DOJ) had policies limiting civil immigration-related arrests in immigration courts. These policies were rooted in the commonsense recognition that such arrests hamper the fair administration of the immigration process and create a palpable fear that disincentivizes people from appearing for their hearings. However, this recent wave of indiscriminate mass detention — promulgated by a new nationwide campaign to collude with the immigration courts to detain people attending their immigration court hearings[9] – has created a dramatic shift in immigration enforcement policy. In May 2025[10], the government implemented an unprecedented policy of moving to dismiss removal proceedings under 8 U.S.C. § 1229 a without notice. This policy enabled DHS to deploy its prior repeal of limits on courthouse arrests to detain noncitizens who show up for immigration-court proceedings—in good faith and at the government's instruction—and place those same people in expedited removal. *See* 8 U.S.C. § 1225. As a result, class action lawsuits are pending,[11] and many other cases of detention have been declared illegal by dozens of federal judges. Yet this has not stopped this government overreach, and this deceit has now spilled over to USCIS and ERO.

While Mr. Torres does not contest the lawfulness of his administrative arrest[12] he does assert that the tactics used by USCIS and ERO officers to obtain that arrest are the controlling factors that led to the charges within this indictment, and that that conduct was "outrageous" and

---

[9] See https://immigrantjustice.org/press-release/unlawful-ice-arrests-at-immigration-courthouses-prompt-lawsuit-by-advocates-and-immigrants/
[10] *See* Todd M. Lyons, Acting Director, U.S. Immigration & Customs Enforcement, Policy Number 11072.4, *Civil Immigration Enforcement Actions In or Near Courthouses* (May 27, 2025) (Final ICE Arrest Memorandum)
[11] *See* U.S. District Court District of Columbia (Washington, DC) Case No 1:25-cv-02279
[12] Mr. Torres recognizes that an individual on parole or pending adjustment may be taken into custody at any time for virtually any reason.

an "unreasonable ruse", which should indicate to this Court that his indictment must be dismissed as a matter of due process. Here, the work by USCIS and ERO did not uncover criminal activity, as Mr. Torres's presence in the United States was not illegal at the time they began their plot to arrest him. This plot, however, did initiate and instigate it. Though the threshold for this claim is high (*see* United States v. Osborne, 935 F.2d 32, 36 (4th Cir. 1991)) Mr. Torres asserts that the actions of the government in this case meet that level of outrageous conduct.

The ruse that led to this outrageous conduct began on July 30, 2025, when USCIS Louisville emailed Enforcement and Removal Operations ("ERO") Louisville regarding "several subjects reporting to their office with either final orders of removal or criminal history." **See Exhibit D**. USCIS then, knowing there would be intent to arrest Mr. Torres if he was located, set the stage for that location and arrest to be more easily facilitated. They did so, however, through lies and deceit. USCIS sent its letter (**Exhibit E**) to Mr. Torres to lead him to believe that he was simply coming in for an interview on his adjustment application. Even his own attorney did not foresee the likelihood of an arrest, as he sent only an interpreter with the Defendant to assist in the interview process. Such deceit is improper. *See* United States v. Ramirez, 976 F.3d 946, 954 (9th Cir. 2020) *citing* Alverez-Tejeda, 491 F.3d at 1017 ("We take a closer look" at the reasonableness of the government's use of deception "when agents identify themselves as government officials but mislead suspects as to their purpose and authority."); *see also* Alverez-Tejeda, 491 F.3d at 1017 (quoting United States v. Bosse, 898 F.2d 113, 115 (9th Cir. 1990) (The balance of interests shifts significantly when the government's chosen ruse invokes the public's trust in law enforcement because of the concern that "people 'should be able to rely on [the] representations' of government officials.")[13].

---

[13] "This concern is at its zenith when government officials lie in order to gain access to places and things they would otherwise have no legal authority to reach." Id. "We think it clearly improper for a government agent to gain access

7

Believing in this representation by USCIS, Mr. Torres appeared, waited for his turn, and met with USCIS in their office for his interview (which at that point was completely unnecessary); all occurrences that lured him into a sense of comfortability. ERO officers could have appeared at any time to arrest him. Instead, they waited in the wings until the Mr. Torres was handed a letter, written entirely in English[14], which administratively closed his request for adjustment case[15] and his interview was concluded. He was then ushered into a closed off hallway without any explanation or the benefit of his interpreter, to be confronted and surrounded by a number of these plain-clothed individuals who produced no badges or warrants before telling Mr. Torres that he was being arrested for reasons unknown to him. Officer Christian Rodriguez then reached out and grabbed Mr. Torres's arm and a shocked Mr. Torres stated "you cannot"[16] as he stuck out his arm, trying to ascertain the situation that was rapidly unfolding in front of him. The entire confrontation in the hallway took less than five (5) minutes and no officer was reported to have sustained any injuries. **See Exhibit H.** Mr. Torres was subsequently arrested and charged in this case for that confused reaction at a moment where he was completely terrified.

Here, the role of government has passed the point of tolerance and acceptable deceit. This case can be likened to United States v. Phillips, where the Court found that federal agents violated the Fourth Amendment by using a ruse to execute an arrest. 497 F.2d 1131, 1136 (9th Cir. 1974).

---

to [places and things] which would otherwise be unavailable to him by invoking the private individual's trust in his government." Id. at 1017 (quoting Bosse, 898 F.2d at 115)). That is, government agents violate the Fourth Amendment if their authority to access the evidence in question was obtained by "misrepresenting the scope, nature or purpose of a government investigation." Bosse, 898 F.2d at 115. "[A]ccess gained by a government agent, known to be such by the person with whom the agent is dealing, violates the fourth amendment's bar against unreasonable searches and seizures if such entry was acquired by affirmative or deliberate misrepresentation of the nature of the government's investigation." Little, 753 F.2d at 1438 (emphasis added).

[14] Mr. Torres-Carmona speaks a minimal amount of English.

[15] This was an improper closure by USCIS, who created and had possession of the documents that stated Mr. Torres-Carmona had been deemed an arriving alien, which would have required USCIS to make a determination as to his adjustment, not the Courts as USCIS's closure letter claims.

[16] What Mr. Torres-Carmona is alleged to have said varies in the various submitted statements

In Phillips, the Court assumed the agents had probable cause to arrest the defendant, Id. at 1133, but found that the agents did not have authority to enter the defendant's office building to effect his arrest because they lacked probable cause to think he would be inside, Id. at 1136. This is like Mr. Torres's situation in that officers had probable cause (albeit an incredibly low bar) to arrest Mr. Torres but did not have authority to enter buildings to hunt him down. In Phillips, like here, the agents concocted a ruse to fill this gap in their authority: the agents directed uniformed police officers to knock on the building door and ask another occupant for "permission to enter to investigate a report of a burglary in the building," even though there was no such report. Id. at 1133. After the uniformed officers obtained "consent" to enter, the agents followed them inside and arrested the defendant. Id. The defendant's arrest violated the Fourth Amendment because the ruse could not create the authority to access the building the officers did not already possess, particularly because the agents revealed their status as law enforcement and misrepresented the purpose of their investigation. See Id. at 1135 & n.4; Bosse, 898 F.2d at 115 (discussing Phillips and explaining that this type of misrepresentation invalidates consent). USCIS employed a similar ruse by concocting false pretenses to both secure Mr. Torres's presence in their office, and well the administrative closure of his adjustment application. The United States should not be permitted to reap the benefit of such deceit.

  If not convinced that this conduct violates the Fourth Amendment, this Court should find that it also violates the Due Process Clause of the Fifth Amendment. The terror that many people have had when cornered by masked individuals who look like they are about to head to the gym for a workout rather than law enforcement, has been a fear that has been well documented in recent months. Often times these incidents have occurred in locations where aliens/undocumented persons believe they are taking lawful and correct action to become citizens. Thus, they have little

to no idea what is coming before the handcuffs are placed. In this particular case, it is especially outrageous conduct because the Government here resorted to subterfuge, in that Mr. Torres's presence in that room of USCIS was created on a pretense and sham of an improper administrative closure of his immigration case. The above deceitful conduct did not facilitate the discovery or suppression of ongoing criminal activity; thus, it served no justifying social objective. Rather, it put the law enforcement authorities in the position of creating new crimes for the sake of arresting a person that, despite having the ability to arrest him at any time, had been persuaded to appear in a tense and confusing situation to hasten the accomplishment of their goal. It was this evil of law enforcement officers fraudulently creating a situation for a person who is otherwise innocent in order to lure them to a situation highly likely to result in the possible commission of this particular type of offense. *See* Sorrells v. United States, 1932, 287 U.S. 435, 448, 53 S.Ct. 210, 215, 77 L.Ed. 413.

## CONCLUSION

Mr. Torres is an individual who is trying to lawfully become a citizen of this country. He also is a man who remains innocent of the criminal charges he has pending. Though, as a parolee, he has always been subject to arrest, that arrest must still be guided by the protections of the Constitution. In this case, his arrest does not conform to such protective requirements. Rather, his arrest was only procured because agents of the government used lies and manipulation to secure an easier but improper way to detain him. They did so by manufacturing and manipulating a situation in which Mr. Torres expected to be in a safe and protected area and springing an unsuspecting arrest on him in a tiny, confined hallway with three (3) plain-clothed officers. This behavior alone led to the charges in this Indictment. The maniacal sense of righteousness presently raining down from this administration to its woefully underqualified agents has completely

perverted the lawfulness of our country's immigration processes. Therefore, this complete lack of oversight of such deceitful and conspiring actions within DHS must be stopped by the hand of the law by this Court dismissing the Indictment against Mr. Torres-Carmona.

Respectfully submitted,

 /s/  Ashlea N. Hellmann
Ashlea N. Hellmann
FERNANDEZ & MOLONEY PLLC
401 West Main Street, Suite 1807
Louisville, Kentucky 40202
(502) 589-1001
ahellmann@fhmlegal.com
*Counsel for Defendant Torres-Carmona*

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Motion was electronically filed with the Clerk of the Court by use of the CM/ECF system, sending notice to all counsel of record, on this the 6th day of November 2025.

 /s/ Ashlea N. Hellmann
Ashlea N. Hellmann

11